UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Securities and Exchange Commission

    v.                                        Case No. 14-CV-192-PB
                                              Opinion No. 2015 DNH 189

Allen R. Smith

MEMORANDUM AND ORDER

The Securities and Exchange Commission ("SEC") brought this securities fraud action against Allen R. Smith for Smith's role in an advance-fee investment fraud scheme.[1] On July 2, 2015, I granted the SEC's motion for summary judgment on all of its substantive claims and its requests for disgorgement and permanent injunctive relief. See Doc. No. 32. I denied without prejudice, however, the SEC's request for a civil monetary penalty. Id. The SEC renewed its request for civil monetary relief on July 30, 2015, asking for a $150,000 penalty. Doc. No. 35. For the reasons set forth below, I now grant the SEC's motion and order Smith to pay $43,342.88.

---

[1] See document number 32 for a detailed factual background.

## I. LEGAL BACKGROUND

The Securities Act and the Exchange Act authorize district courts to impose civil penalties against those who violate the federal securities laws.  See 15 U.S.C. §§ 77t(d)(1); 78u(d)(3)(A); SEC v. Boey, 2013 DNH 101, 4 (noting that civil penalties may be imposed "in addition to disgorgement and injunctive relief") (citation and punctuation omitted).  These penalties are intended to "punish and deter securities law violations."  Boey, 2013 DNH 101, 4 (citation and punctuation omitted).

The Securities Act and the Exchange Act create three tiers of civil penalties based on the severity of the defendant's misconduct.  See 15 U.S.C. §§ 77t(d)(2); 78u(d)(3)(B).  First tier penalties are available for all violations.  Second tier penalties are available only for "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement."  And third tier penalties are available for all second tier violations that also "directly or indirectly resulted in substantial losses or created a significant risk of substantial loss to other persons."

For each of these tiers, the maximum allowable penalty is the greater of (1) a set dollar amount per violation or (2) the

defendant's gross pecuniary gain from the violation.[2]  See 15 U.S.C. §§ 77t(d)(2); 78u(d)(3)(B).  For an individual defendant whose violations occurred between March 2009 and March 2013 (the relevant time period here), the maximum penalty per violation is $7,500 for the first tier, $75,000 for the second tier, and $150,000 for the third tier.[3]  So, for instance, the maximum penalty for a single third tier violation that occurred in the relevant time period is the greater of $150,000 or the defendant's gross pecuniary gain.

---

[2] Although the Securities Act and the Exchange Act authorize courts to impose penalties "for each violation," it does not define the term "violation."  See 15 U.S.C. §§ 77t(d)(2); 78u(d)(3)(B); In re Reserve Fund Sec. & Derivative Litig., 2013 WL 5432334, at *20 (S.D.N.Y. Sept. 30, 2013).  Prior courts have, however, assessed penalties based on (1) the number of schemes in which the defendant was involved, (2) each violation of a statutory provision, or (3) the number of victims.  See SEC v. Stanard, 2009 WL 196023, at *35 (S.D.N.Y. Jan. 27, 2009) (per scheme); SEC v. Coates, 137 F. Supp. 2d 413, 428-30 (S.D.N.Y. 2001) (per misrepresentation); SEC v. Kenton Capital, Ltd., 69 F. Supp. 2d 1, 17 n.15 (D.D.C. 1998) (per defrauded investor); see also SEC v. Pentagon Capital Mgmt. PLC, 725 F.3d 279, 288 n.7 (finding no error in district court "calculating the maximum penalty by counting each late trade as a separate violation").

[3] The Securities Act and Exchange Act sets the maximum penalties for a natural person at $5,000 for first tier, $5,000 for second tier, and $100,000 for third tier violations.  See 15 U.S.C. §§ 77t(d)(2); 78u(d)(3)(B).  These statutory maximums are adjusted for inflation on a periodic basis.  See 28 U.S.C. § 2461 (note).  In the 2009 adjustment, the maximum "per violation" penalties for natural persons for violations between March 2009 and March 2013, increased to $7,500, $75,000, and $150,000.  See 17 C.F.R. § 201.1004 (Table IV); available at https://www.federalregister.gov/a/E9-4379.

Finally, within the statutory range, "the actual amount of the penalty [is] left up to the discretion of the district court," based on the case's particular facts. SEC v. Kern, 425 F.3d 143, 153 (2d Cir. 2005); see Boey, 2013 DNH 101, 4-5 (explaining that the statute "establishes a ceiling" but does not "require that the full . . . allowable penalty be imposed") (citation and punctuation omitted). In exercising that discretion, courts have considered factors including (1) the egregiousness of the violation, (2) the defendant's scienter, (3) the repeated nature of the violation, (4) defendant's admission of wrongdoing and cooperation with authorities, and (5) the defendant's financial situation. See, e.g., SEC v. Kapur, 2012 WL 5964389, at *7 (S.D.N.Y. Nov. 29, 2012); SEC v. Locke Capital Mgmt., Inc., 794 F. Supp. 2d 355, 370 (D.R.I. 2011).

## I.   ANALYSIS

Imposing a civil monetary penalty thus follows a three-step process: (1) set the appropriate tier based on the defendant's conduct, (2) determine the statutory maximum penalty from the defendant's gross pecuniary gain and number of "violations," and (3) exercise discretion to assess an appropriate penalty within that statutory range. I follow that analysis here.

**A.   Tier**

The SEC contends that a third-tier penalty is available here.  I agree.  As described above, third-tier penalties are permitted only for violations that involve (1) "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and (2) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons."  See 15 U.S.C. §§ 77t(d)(2); 78u(d)(3)(B).

Smith's conduct here satisfies both statutory requirements.  In granting the SEC's motion for summary judgment, I concluded that Smith violated five securities law provisions.  See Doc. No. 32.  In so concluding, I focused primarily on Smith's April 2011 certification letter to prospective investors.  Id. at 13-14.  That letter contained several fraudulent misrepresentations and "persuade[d] at least four investors to contribute, and lose, over $2 million."  Id. at 13-14, 18, 25.  Smith's conduct, and that letter in particular, thus "involved fraud" and resulted in "substantial losses," and so meets both requirements for a third-tier penalty.[4]  See 15 U.S.C. §§ 77t(d)(2);

---

[4] I focused on the April 2011 letter, in large part, because the SEC's complaint and motions made it "impossible to determine exactly how many securities violations the SEC alleges that

5

78u(d)(3)(B). I therefore agree that a third-tier penalty is available in this case.

**B.   Statutory Maximum Penalty**

The statutory maximum penalty for a third-tier violation (during the relevant period) is, again, the greater of the defendant's gross pecuniary gain from the violation or $150,000 per violation. Here, Smith's gross pecuniary gain was $43,342.88. Doc. No. 32 at 26-27 ($39,525 in compensation from the scheme's principals, plus $3,817.88 in prejudgment interest). With respect to the "per violation" provision, the SEC asserts that "[a]lthough Smith violated multiple provisions of the securities laws, violated several provisions multiple times, and did so in connection with at least four investors, these violations occurred in the same scheme," and I should therefore find only a single violation. Doc. No. 35 at 4.

Because I agree that Smith committed at least one violation, I need not endorse the SEC's approach, or determine how many "violations" Smith actually committed.[5] Instead, for

---

Smith committed." Doc. No. 32 at 13 n.5. I follow that same approach here.

[5] The SEC argues that "[e]ach of [Smith's] misrepresentations, to each investor, could be penalized as discrete violations of several of the securities laws." Doc. No. 35 at 8. Because the SEC asks the court to find only one violation (and because Smith

6

the reasons provided below, I conclude that a penalty below the statutory maximum is appropriate in this case.

**C.   <u>Penalty Imposed</u>**

The SEC asks the court to impose a $150,000 penalty for Smith's "overall participation" in the scheme.  Doc. No. 35 at 5.  The SEC contends that this penalty – the highest permitted for a single "per violation" penalty – is warranted based on "the egregiousness of [Smith's] violations," his scienter, repeated violations, failure to admit wrongdoing, and other factors.  <u>Id.</u> at 6-8.  I disagree for several reasons.

First, Smith played a secondary role in the overall fraud.  <u>See</u> <u>Boey</u>, 2013 DNH 101, 5.  Undoubtedly, Smith participated in the scam for several years, and helped to persuade investors to contribute, and lose, more than $2 million.  Doc. No. 32 at 25.  He was not, however, principally responsible for planning or executing the fraud.  <u>See</u> <u>id.</u> at 2.  He instead acted largely as the principals' paymaster and legal counsel, and was paid accordingly - for his role in a $10.8 million scheme, Smith received only $39,525 in payment.  <u>Id.</u> at 2, 7.  That limited role, and Smith's relatively small financial gain, warrants a lower penalty.  <u>See</u> <u>Boey</u>, 2013 DNH 101, 5.

---

does not challenge this calculation), I need not assess whether the SEC's argument is correct as a matter of law.

7

Further, despite the SEC's assertion that "Smith's scienter was high," Doc. No. 35 at 6, I concluded in the July 2, 2015 order only that Smith acted "with at least extreme recklessness." Doc. No. 32 at 20. That finding was sufficient to establish scienter, and to grant the SEC's motion for summary judgment. Id. I did not find, however, that Smith acted knowingly. That too warrants a smaller fine.

Finally, I note that I previously granted the SEC's request for permanent injunctive relief. See id. at 29. That injunction should prevent Smith from "committing further violations of the securities laws and from participating in the offer or sale of any security in the future." Id. at 25. Imposing the maximum civil penalty is therefore unnecessary to deter Smith from committing future securities laws violations. See Boey, 2013 DNH 101, 5-6.

Based on the above factors, and in light of the court's considerable discretion in this area, I conclude that a penalty equal to Smith's gross pecuniary gain from the scheme is proper here. See 15 U.S.C. §§ 77t(d)(2); 78u(d)(3)(B); SEC v. Yuen, 272 Fed. Appx. 615, 618 (9th Cir. 2008) (noting that a district court is "well within its discretion in setting the civil penalty equal to the disgorgement amount"). A $43,342.88 penalty, equal to the disgorgement amount, reflects Smith's

8

culpability in this scam, and serves the purposes of these penalties – to punish and deter securities law violations. See Boey, 2013 DNH 101, 4.

## II.  CONCLUSION

For the reasons set forth in this Memorandum and Order, I grant the SEC's motion for civil penalties (doc. no. 35), and order Smith to pay $43,342.88.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

October 1, 2015

cc:   Stephen W. Simpson, Esq.
      Allen Ross Smith, pro se